# Hill *v.* Hill, Appellant.

*Divorce—Divorce a mensa et thoro—Conflict of laws—Reconciliation.*

A decree of divorce from bed and board entered in another state with alimony to the wife, will not bar a subsequent suit for divorce brought by the wife in Pennsylvania, where it appears that after the decree was entered in the other state, the parties were recon-

Syllabus—Statement of Facts. [62 Pa. Superior Ct.

ciled, established a home together in Pennsylvania, but subsequently separated.

A decree of divorce from bed and board does not dissolve the relation of husband and wife; it merely suspends some of the obligations arising out of the marriage relation. If there is a subsequent reconciliation, alimony ceases, and a new divorce is necessary to support the wife's claim of alimony.

Argued Nov. 16, 1915. Appeal, No. 113, Oct. T., 1915, by defendant, from decree of C. P. Bradford Co., May T., 1912, No. 316, granting divorce in case of Mabel Snow Hill v. George R. Hill. Before RICE, P. J., HEAD, PORTER, HENDERSON, KEPHART and TREXLER, JJ. Affirmed.

Libel for divorce.

NEWCOMB, J., found the facts to be as follows:

1. The parties are both natives of this State and were residents of this county at the date of their marriage in 1891. They lived and cohabited together as husband and wife from that date until 1901. They were then living in Michigan, where the wife withdrew from the husband's house under circumstances which culminated in a divorce from bed and board at her suit in the proper court of Chippewa County, that state.

2. It is not disputed that the complaint in that instance was essentially the same as that now presented.

3. Neither is it disputed that the decree included substantial alimony for the support of Mrs. Hill and her three surviving children, the custody of whom was awarded to her.

4. The terms of the decree were that the parties "be, and they are divorced from bed and board forever......" "That the said defendant, George R. Hill, pay to the complainant, for the support and maintenance of herself and said children the sum of $1,300.00 on or before the first day of September, 1901, and the further sum of $900.00 per annum, payable in monthly installments of $75.00 on the first day of each and every month in advance, beginning on the first day of July, 1901, and con-

tinuing until the youngest of said children shall attain the age of fourteen years, or until the further order of this court; provided that said first payment of $75.00 shall be paid within five days after this decree."

5. The youngest child to whom reference was so made is a daughter, Marjorie, then a mere infant but a few months of age. She is now approaching her 14th birthday, which will be April 15th this year.

6. No further order of that court has been made in the premises, except to grant leave to respondent to fund his liability by purchasing an annuity. Thus in place of other security the court approved the undertaking of a Michigan Trust Company to pay to Mrs. Hill the sum of $13,574.40 in 168 monthly installments of $80.80. Just when the order was made doesn't appear, but it must have been within a few months after the decree, as the order took effect in April, 1902. These payments have been regularly made and under the terms of the trust must continue until April, 1916, when Marjorie will be 15 years of age.

7. In the meantime Mrs. Hill had returned with her children to this county where she supported herself and family by teaching music, until 1908, when at the husband's instance the parties became reconciled and by mutual consent resumed their marriage relations. For a time they had their home at Athens, eventually removing to Towanda where they lived together as husband and wife until late in 1911. During this time another child, Richard, was born.

8. Mrs. Hill left the home about the first of December, 1911, claiming to have been compelled to do so by reason of the husband's alleged misconduct which forms the subject matter of this complaint.

9. But both parties sued, the husband's suit being to No. 297, same term. The cause of action alleged in each case was the same, but the relief asked for by the husband was an absolute divorce. Evidently the wife's action was suffered to lie dormant pending his suit, which

was contested on the same grounds now urged in her behalf. After full and painstaking hearing the husband's case went to decree against him, which, in April last year, was affirmed on appeal: Hill v. Hill, 57 Pa. Superior Ct. 1.

10. The married life of the parties has been characterized by the most grievous discord and bitter asperities. That they cannot live together in harmony is clear beyond the possibility of doubt. And while the evidence is conflicting, after much deliberation in the light of all the circumstances, the appearance of the witnesses, their manner upon the stand and their apparent disposition, the conclusion seems warranted, and it is accordingly found, that the issue is with libellant.......

The foregoing facts are believed to warrant the following conclusions of law.

1. There is nothing in the former decree entered in Michigan which would operate as a bar to this proceeding; but the equities of the case require that libellant relinquish any claim to the balance of the fund now held in trust for her under order of that court, as a condition precedent to the receipt of alimony under this proceeding; and it should be so provided by decree to be now made.

2. While the evidence has been restricted to what happened between the parties after the reconciliation, the fact and nature of the former decree, having been pleaded by respondent, are fair matters for consideration in so far as they are persuasive against his defense on the merits.

3. Libellant is entitled to the relief asked for.

*Error assigned* was decree denying a divorce.

*J. Roy Lilley,* with him *William P. Wilson,* for appellant.—Where, after reconciliation, the husband so conducts himself as to give the wife renewed cause for withdrawing from his society, the original decree for alimony

is still good and may be enforced against him, notwithstanding the reconciliation: Nathans v. Nathans, 2 Philadelphia 393; McClung v. McClung, 11 W. N. C. 122.

*Chas. M. Culver,* with him *D. C. DeWitt,* for appellee, cited: McKarracher v. McKarracher, 3 Yeates 56; Tiffin v. Tiffin, 2 Binney 202; Henkel's Est., 59 Pa. Superior Ct. 633.

OPINION BY HENDERSON, J., March 16, 1916:

By stipulation of counsel it was agreed that the only subject to be considered on this appeal is that of the jurisdiction of the court below as affected by a decree between the same parties in the State of Michigan. The evidence shows that the plaintiff instituted an action for divorce from bed and board in Michigan and on the 5th of July, 1901, obtained a decree which embraced an allowance of alimony which was modified February 21, 1902, by an arrangement between the parties so that a fixed amount was paid into court instead of the monthly payments mentioned in the original decree the same to be a trust fund under the direction and control of the court for the period of fourteen years from the date of the original decree. The plaintiff soon afterward returned to Bradford County, Penna., where she and her husband had formerly lived and at a later date the latter also returned there. In 1908 they became reconciled, resumed the relation of husband and wife and established a home where they continued to live for a period of three years or more during which time a child was born to them. That the reconciliation took place was shown both by the maintenance of their home and the birth of their child and by the defendant's declaration contained in his reply to the answer of the plaintiff made in a divorce proceeding between them at No. 297, May Term, 1912, in the Court of Common Pleas of Bradford County, in which case George R. Hill was the complain-

ant and Mabel Snow Hill, the defendant.    Referring to the divorce proceeding in the State of Michigan the appellant set forth in the reply referred to that "the said proceedings were settled, satisfied, released, nullified and avoided by agreement of the parties and pursuant to which each party resumed full marital rights and were accorded full original possession and control of all their children."    The fact was thus established that there was a complete reconciliation between the parties after the decree in Michigan.    A decree of divorce from bed and board does not dissolve the relation of husband and wife; it merely suspends some of the obligations arising out of the marriage relation: Clark v. Clark, 6 W. & S. 85.    This was so both under the English Common Law and the Canon Law, and such is the law in this State.    It was held in McKarracher v. McKarracher, 3 Yeates 56, in a case of divorce from bed and board that when there has been a reconciliation between the parties after the decree, a new divorce is necessary to support the wife's claim of alimony; and in Tiffin v. Tiffin, 2 Binney 202, that alimony only continues until a reconciliation takes place: Barrere v. Barrere, 4 Johnson's Chancery, 187.    Our Act of 1817, provides that alimony shall continue until a reconciliation shall take place or until the husband shall by his petition or libel offer to receive and cohabit with his wife again.    It is not made to appear that the law of the State of Michigan is different from that of this State on the subject and we assume, therefore, that it is the same.    The reconciliation of the parties in Pennsylvania had the effect to restore the marriage relation and to annul the decree for alimony entered in Michigan.    It follows as a logical and legal consequence that the decree in that state was not a bar to the action brought by the appellee in Pennsylvania after the separation which occurred in 1912.

The decree is affirmed at the cost of the appellant.