## Brown v. Brown

*Robert A. Weinert*, for plaintiff.

SCHEIRER, J., November 9, 1966.—In this divorce action, service of the complaint was made by publication on June 17, 24 and July 1, 1966. Plaintiff moved for the appointment of a master on July 1, and the master was appointed on July 5.

The Pennsylvania Rules of Civil Procedure provide that a master may be appointed to hear the testimony "after the action is at issue": Pa. R. C. P. 1133(a). The action is at issue "if no answer has been filed and service has been made by publication 20 days after the last appearance of the publication": Pa. R. C. P. 1131(c). The appointment could not have been made, therefore, until 20 days after July 1st.

Twenty days now having elapsed since July 1st, and the action being at issue, we shall reappoint the same master as heretofore with directions to proceed with the taking of testimony after proper notice of the hearing to defendant as provided by rules of court. With respect to the taking of testimony, we shall adopt the procedure approved in Shroyer v. Shroyer, 85 D. & C. 461, as follows:

"In the event that defendant in this action shall not appear, it shall be unnecessary to record again the testimony taken in the prior hearing, but the same may be offered in evidence, at the new hearing, as previously recorded; however, should defendant appear in the action, then the testimony is to be taken de novo".

We quote from Cole v. Cole, April Term, 1964, 367, where we said:

"The master apparently was unaware of his premature appointment and we call to the attention of all masters the provision of local Rule 1133 with respect to the preliminary duties of a master.

" '1. Immediately after his appointment, the master shall ascertain the sufficiency and regularity of the proceeding and determine whether the Court has jurisdiction. If the proceeding is in any way defective, he shall notify the attorneys and suspend further action for a period of ten (10) days. If the defects are not cured within the allotted time, the master shall so report to the Court.

" '2. If the master is satisfied that the proceeding is in proper form, he shall proceed to the hearing'.

"Faithful adherence to these requirements would be a service to the Court and of benefit to parties".

We remind the profession that the printed form to be utilized in moving for the appointment of a master provides a space for the recital of the time and method of the service of the complaint. In this case, counsel

merely wrote "Publication for three consecutive weeks". If plaintiff's attorney fails to calculate the passage of 20 days from the date of service, which, in a case of service by publication with no answer filed, would be from the date of the last appearance of the notice, it would be possible for the court to do so if the dates of publication are noted as required.

The complaint avers "that in violation of his marriage vows and of the laws of the Commonwealth of Pennsylvania, the Defendant deserted the Plaintiff on or about March 18, 1957, which is upwards of two years". Plaintiff testified as follows:

"Q. Now, Mrs. Brown, when was the last time that you saw your husband?

"A. The last time was in '57.

"Q. Do you recall what month it was in 1957?

"A. I believe in March.

"Q. March of 1957?

"A. Yes.

"Q. At that time did your husband leave you?

"A. Yes.

"Q. And did you later discover why he left you?

"A. Well, he got in trouble and got put in jail.

"Q. What prison did he get put in?

"A. Northampton County.

"Q. Do you know what kind of trouble he got in?

"A. For stealing.

"Q. And do you know how long he was in jail in Northampton County?

"A. For three years.

"Q. In other words, he got out of jail in March of 1960?

"A. Yes.

"Q. And when he got out of jail did you discover what address he gave?

"A. In Bangor.

"Q. Bangor.

"A. Bangor R.D. 3.

"Q. Northampton County, Pennsylvania.

"A. Yes.

"Q. Have you heard from your husband since he got out of jail?

"A. No.

"Q. Do you know where he is now?

"A. No.

"Q. Did he ever write to you after he got out of jail?

"A. No.

"Q. Did you ever hear anybody else say where he was?

"A. No.

"Q. Did you ever hear anybody talk about him?

"A. No.

"Q. His parents, brothers, or sisters?

"A. No".

The master correctly found that the compulsory withdrawal begun by a spouse's imprisonment for the commission of a crime is not of itself desertion: Collins v. Collins, 28 Pa. C. C. 47. To constitute a cause for divorce, the desertion must be voluntary. When the absence is due to coercion or imprisonment, there is no ground for a divorce because of desertion: Frantz v. Frantz, 1 Dist. R. 241.

The master then proceeded in his report to determine if defendant "deserted" plaintiff in March, 1960, upon his release from prison. In a real sense, he amended plaintiff's complaint so that the date of desertion would be March, 1960, instead of "on or about March 18, 1957". The "amendment" was without request by plaintiff and without approval of the court. The motive no doubt was to conform the "allegata" to the "probata".

The law is in a state of confusion on the allowance of amendments, especially after the filing of the

master's report. We are not concerned with a trivial amendment such as changing an address from 455 Hamilton Street to 457 Hamilton Street, or the date of marriage from one month or year to another. These have been permitted at hearing without court approval. Here, the variance in the dates of the alleged desertion is involved. Some courts have held such a variance to be fatal and not curable by amendment. Others have permitted an amendment of the date of desertion since it would not introduce a new cause of action. Court approval, however, is required: Fritz v. Fritz, 11 D. & C. 721. It is clear that the right of amendment is contingent upon notice to the other party. The comments in Freedman: Law of Marriage and Divorce in Pennsylvania (2d ed.), at page 1200, are of interest:

"The courts should exercise the authority conferred upon them to permit amendments to the complaint at any time so long as proper notice of the amendment is given and no injustice is visited upon the adverse party. The liberality of courts of law and equity, which allow amendment of pleadings at any time in the interest of justice, even on appeal, has been made equally applicable in divorce suits by the Rules of Civil Procedure. The view that amendment of any material matter should not be allowed if the defendant has not been duly notified, cannot properly be questioned and the courts can be expected to protect defendant's right in the exercise of the authority conferred upon them by the Rules. This, however, is far different from the inflexible principle sought to be established by some of the early decisions that an amendment should never be allowed after the filing of the master's report. Amendments should be and under the Rules clearly are permitted even after the master's report has been filed so long as the usual notice is afforded to the adverse party. The principle

here must be the same as in any other instance where the proposed amendment is in any way material,— it must be the same whether application is made before or after the filing of the master's report. The decisions in which amendments have been refused after filing of the master's report, where there was no personal service, might perhaps even be justified as proper exercises of discretion, not because the applications were made belatedly, but rather because there was a want of notice to the adverse party and the amendment went to a material matter. In the remaining instances, where there had been personal service in the proceeding and, therefore, personal service of the application to amend was likewise obtainable, there would seem to be no just ground for denial of the amendment.

"In some instances the reason behind the refusal of amendment after the filing of the master's report has been said to be that the defendant may have refrained from defending because of knowledge of the defect and that it would therefore be unjust to cure the defect and thereby set up for the first time a valid cause for divorce, without notice to the defendant.

"Manifestly, however, this is a non sequitur. For if the right to amend is established when the complaint has been served by publication, then one constructively served would not rest content with a refusal to defend and complete disinterest in the proceeding; on the contrary he would have knowledge of the possibility of amendment by which the defect might be cured. Moreover, the same power which permits service of the complaint by publication likewise may provide for similar service of notice of a proposed amendment. In such a case, therefore, it could not with reason be contended that constructive notice, although adequate for service of the complaint, is insufficient as service of notice of the amendment".

It is apparent, therefore, that the master lacked the authority to make a finding of a date of desertion substantially at variance with the date pleaded. Such an amendment may be allowed by the court in its discretion upon application of plaintiff. The procedure would be by petition and rule and, in this case, service by publication. See Freedman, supra, at pages 1203, 1204.

We do not at this time pass upon the evidence relating to a possible act of desertion by defendant in March, 1960, but we urge that attention should be given by plaintiff and the master to the possible consent of plaintiff to the separation. We get the impression that she could not have cared less whether defendant returned to her following his release from prison. The guilty intent to desert is manifested when, without cause or *consent*, either party withdraws from the residence of the other: Zirpoli v. Zirpoli, 185 Pa. Superior Ct. 378, 138 A. 2d 295. By suggesting earlier that if defendant did not appear at a hearing it would not be necessary to repeat the testimony taken at the first hearing, we do not intimate that the evidence as to a desertion in March, 1960, is adequate. Relevant testimony received at the first hearing need not be repeated.

If the ground of desertion is not well laid, there may be grounds for divorce based upon indignities to the person or the conviction of a crime. However, in such case, the evidence will have to be amplified or it may be wiser to discontinue the present action and start anew.

Two other matters require mention. Plaintiff avers that defendant "deserted" plaintiff. Pa. R. C. P. 1126 (6) requires that the ground on which the action is based must be stated substantially in the language of the act of assembly. To aver that defendant "deserted" plaintiff is not in conformity with the rule.

The pleader is not privileged as is the master to refer to the grounds for divorce in brief form: See local rule 1133(e) under master's report. The master is reminded of the requirement in local Rule 1133(d)(4):

"Where the ground for divorce is desertion, the record must disclose whether a proceeding was instituted for the support of the wife and the disposition thereof".

Now, November 9, 1966, for the reasons set forth in the foregoing opinion, the record of the above captioned case is returned to the office of the prothonotary. The within action is dismissed unless the complaint is amended as herein directed within 20 days after the service of the within opinion and order upon plaintiff's counsel. Upon allowance of an amendment, the master appointed on July 5, 1966, is reappointed with directions to give proper notice of a hearing to defendant, and to conduct said hearing and file a report in accordance with the foregoing opinion.